*E-Filed 5/5/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENESAS TECHNOLOGY CORP.<br><br>   Plaintiff,<br><br>   v.<br><br>NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORPORATION, USA,<br><br>   Defendants.<br><br>NANYA TECHNOLOGY CORP. and NANYA TECHNOLOGY CORPORATION, USA,<br><br>   Counterclaim Plaintiffs,<br><br>   v.<br><br>RENESAS TECHNOLOGY CORP.,<br><br>   Counterclaim Defendant. | Case No.  C03-05709 JF (HRL)<br><br>**ORDER ON RENESAS' MOTION TO COMPEL** |

**INTRODUCTION**

On May 3, 2005, this court heard the motion of plaintiff Renesas Technology Corp. (Renesas) to compel discovery. Defendants Nanya Technology Corp. and Nanya Technology Corp. USA (collectively, Nanya) opposed the motion. Based upon the papers submitted, and the arguments of counsel, the court issues the following order.

//

**BACKGROUND**

Renesas filed a complaint against Nanya on December 16, 2003, alleging Nanya infringed upon seven of its patents. In this motion, Renesas moves to compel 1) further responses to its Document Requests; 2) a 30(b)(6) witness responsive to its deposition notice topics 2-4; and 3) further interrogatory responses. It also seeks an order striking Nanya's responses to Requests for Admissions (RFAs) and compelling it to admit or deny the requests.

**DISCUSSION**

**I.    Document Requests, 30(b)(6) Witness, and Interrogatories**

   **A.    Parties' Arguments**

Renesas served document requests, a 30(b)(6) Notice of Deposition, and interrogatories on Nanya directed towards "all" of Nanya's DRAM-Type devices. Nanya objected to the discovery on numerous grounds, including that Renesas' Preliminary Infringement Contentions (PICs) were inadequate.[1]

Nanya asserts that the discovery sought is irrelevant and overbroad. In support of this assertion, it raises essentially the same argument that it raised in its motion to strike: that Renesas' pre-filing investigation was inadequate, and that it therefore has no factual foundation justifying discovery concerning all of Nanya's DRAM-Type devices. The court rejected this argument in its order on the motion to strike, finding that Renesas' reverse engineering of several products, along with its industry knowledge and examination of reverse engineering reports and Nanya's part numbering guide, was sufficient to support a reasonable inference that all Nanya's products infringed.

However, Nanya argues that the burden of demonstrating relevance for discovery is different than the burden of demonstrating an adequate pre-filing investigation. Allegedly, the fact that Renesas conducted an adequate investigation for PICs purposes does not establish relevance for discovery

---

[1] Nanya previously moved to strike the PICs, in part because Renesas' pre-filing investigation was allegedly insufficient. This court found Renesas' investigation to be sufficient in a November 10, 2004 order. Nanya subsequently filed objections to the order, arguing in part that it was clearly erroneous because the accused products fell into eleven different families, rather than the four tables alleged by Renesas. Judge Fogel overruled that objection on the grounds that Nanya had not properly raised the issue before this court.

   Renesas has now filed a motion for leave to file amended PICs (in accordance with this court's November 10, 2004 order). The motion is set for hearing by Judge Fogel on June 3, 2005.

1  purposes. It asserts that Renesas' investigation is insufficient to demonstrate relevance, and that it is
2  attempting to obtain information on products about which it has not established a right to know.

3  In support of this argument, Nanya submits the declaration of Jason Wu, a senior engineer at
4  Nanya. He states that Nanya's DRAM-Type products fall into eleven different product "families,"
5  rather than the four "tables" suggested by Renesas.[2]  *See* Ex. A to Decl. of R. Young, ¶ 4. He also
6  asserts that investigating products from one family will not provide accurate information about the
7  architecture and circuitry of products from a different family, as there are substantial architectural
8  differences between families, and the families were designed by different technology partners.[3]  *See id.*
9  ¶ 5. Because Renesas only reverse engineered products from Orion and Draco, just two of the
10 eleven, Nanya asserts that Renesas is only entitled to discovery concerning those two families, and not
11 all Nanya products.[4]

12 Nanya submits that the Wu declaration trumps the declaration of William Dalley, on which the
13 court relied in ruling on the motion to strike. It argues that the Dalley declaration erroneously
14 categorizes the products into four tables, rather than eleven families. It also argues that the Dalley
15 declaration is not based on direct product knowledge like the Wu declaration, but instead on Dalley's
16 inferences and assumptions. Nanya argues that, considering the new evidence contained in the Wu
17 declaration, Renesas' investigation was insufficient to establish relevance.

18 Furthermore, says Nanya, broad discovery into all its devices is burdensome. It claims that
19 the documents are located overseas among eleven engineering groups, and that they cannot be
20 electronically transmitted due to language and computer system differences.

21 //
22 //

---

[2] The Wu declaration identifies the eleven families as Orion, Draco, Venus, Scorpion, Saturn, Mars, Wildcat, Aquila, Mercury, EDO/FPM, and Gaia. Ex. A to Decl. of R. Young, ¶ 4.

[3] Nanya acknowledges, however, that products in the Draco and Orion families (the families containing the products that Renesas reverse engineered), have architectural similarities. *See* Ex. A to Decl. of R. Young, ¶ 6. It attributes this to the fact that both families were designed by IBM. *Id.*

[4] Nanya also disputes whether 64 products are properly in the case. Renesas originally accused 75 products, and subsequently added additional products (bringing the total number of accused products to 160) without leave of court. Nanya objects to the presence of 64 of these subsequently-added products, and is contesting Renesas' motion for leave to add them.

3

**B.      Legal Standard**

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  However, a court has discretion to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).  As Renesas is the party seeking discovery, it bears the burden of demonstrating relevance.

**C.      Analysis**

As noted above, the court found that the showing made by Renesas in opposing the motion to strike supported a reasonable inference that all accused products infringed.  The court finds that this evidence, namely the Dalley declaration, is also sufficient to demonstrate relevance for discovery purposes.  The Dalley declaration concluded that, after reverse engineering three Nanya products and examining Nanya's part numbering guide and reverse engineering reports, it was likely that all accused products contain circuitry that infringes on the patents at issue.

Nanya's new evidence that the products are arranged into eleven families is not necessarily inconsistent with the Dalley declaration.  It is not clear to the court that the manner in which the products are characterized (whether into four tables or eleven families) necessarily affects the relevant circuitry, i.e. the circuitry that Renesas contends is infringing.  While Nanya contends that product architecture and circuitry differ between families, it has not alleged that these differences in any way affect the circuitry that Renesas contends is infringing.  In other words, it has not alleged that the differences actually make a difference.[5]

Accordingly, that the architecture and circuitry is different between families does not necessarily compel the conclusion that Renesas' investigation was insufficient.  The relevant inquiry is

---

[5] The court is not implying that Nanya is required to demonstrate that products do not contain the allegedly infringing circuitry.  It is simply noting that Nanya has failed to even allege this.

4

not whether the products have similar architecture and circuitry overall, but whether each product contains some circuitry that infringes on the patents at issue.[6]

The court concludes that Renesas has met its burden of demonstrating that the discovery sought is relevant. Nothing presented by Nanya provides the court with a compelling reason to disregard Renesas' demonstration of relevance, and neither has Nanya advanced some sort of alternative construct that would call into question the showing of relevance. Nanya's argument that the products are in some architectural way "different" is simply insufficient to undercut Renesas' investigation.[7] Accordingly, the court orders as follows:

1. Renesas' motion is GRANTED IN PART with respect to document request nos. 2-8 and 11 (seeking technical documents relating to all Nanya's DRAM-Type Devices, including schematics, mask sets, and processes). In response to the requests, Nanya shall produce documents for two products each from the Venus, Scorpion, Saturn, Mars, Wildcat, Gaia, Aquila, Mercury, and EDO/FPM families.[8] Nanya shall select the products from among the 75 that are identified in Renesas' original PICs.

2. Renesas' motion is GRANTED concerning request nos. 16, 17, 19, 20, and 25-26 (seeking documents relating to damages, including sales, revenue, inventory, financial, and licensing information for Nanya DRAM-Type Devices), with the exception that Nanya need not produce information for the 64 products Renesas is currently seeking to add to the case (by amending its PICs). However, if it is not practical or feasible for Nanya to exclude information on the 64 products when it responds to these requests (or some of them), then it shall respond as to all 160 of its DRAM-

---

[6] In fact, Renesas never claimed that the circuitry is identical among products. Rather, it argued that the products are similar in that it is likely that all the accused products contain some infringing circuitry. It seems to the court that some differences between products could be immaterial, so long as each product contains the allegedly infringing circuitry.

[7] Concerning Nanya's burden argument, the court feels that, while there may be some burden and expense to providing the discovery, this burden does not outweigh the benefit of the discovery. *See* Fed. R. Civ. P. 26(b)(2). Renesas has demonstrated that the discovery is relevant, and Nanya has not supported its allegations of burden by submitting affidavits and/or declarations setting forth the time and expense that would be involved in a potential production.

[8] Based on the discussion at the hearing, it appears that having technical information for several products in each family is sufficient to provide Renesas with the information it needs, at least for present purposes.

5

Type products.[9]  If Judge Fogel later rules that 64 more products may be included in Renesas' PICs, then Nanya shall produce responsive information for these products as well without further request, to the extent it has not already done so.

       3.     Renesas' motion is GRANTED with respect to requests nos. 9 and 10 (seeking documents identifying persons with information about DRAM-Type Devices and staffing and organization of personnel).

       4.     Renesas' motion is DENIED AS MOOT with respect to document request no. 21, as Nanya has already provided responsive information.

       5.     Renesas' motion is DENIED AS MOOT with respect to document request nos. 1, 13, 14, and 37.  Renesas has withdrawn these requests.

       6.     Renesas' motion is GRANTED with respect to a 30(b)(6) witness for its deposition topics 2-4 (seeking testimony concerning the design, structure, function and operation of sense amplifiers, voltage generators/charge pumps, and circuitry used to test the memory cells incorporated into each Nanya DRAM-Type Device).  With respect to all eleven product families, Nanya shall produce a responsive witness or witnesses by **May 27, 2005.**

       7.     Renesas' motion is GRANTED IN PART with respect to interrogatory nos. 2 (asking Nanya to identify the schematics that accurately depict the circuitry found in each Nanya DRAM-Type Device) and 3 (asking Nanya to identify the masks used to manufacture all such devices).  Nanya need not respond concerning the 64 products not yet added to the case.  However, if Judge Fogel rules that the 64 products may be added, Nanya shall produce responsive information for these products without further request.

## II.    Requests for Admission

Renesas also seeks an order striking Nanya's responses to Renesas' RFA nos. 1-214 and compelling further responses.

//

---

[9] The scope of Nanya's responses may vary by request, however.  For instance, it may for practical reasons produce licensing information for all 160 products, but produce sales information only for the products that are undisputedly in the case.  If Nanya chooses to proceed in such a fashion, it shall inform Renesas which products are encompassed in each response.

### A. RFA Nos. 1-160

These requests ask Nanya to admit, for each of the 160 accused products, that the circuitry depicted in a particular Nanya document is found in a specific product. Nanya objected to the RFAs on the grounds that the products had not been properly accused and that the terms "circuitry" and "found" were vague, but asserts that it did reword the RFAs and make the appropriate admissions. Renesas replies that Nanya only responded to requests concerning products in the Orion and Draco families, and not to any other products in the other nine families.

As previously discussed, Nanya's argument that Renesas insufficiently investigated numerous products in the litigation is unpersuasive. Accordingly, Renesas' motion is GRANTED IN PART concerning RFA nos. 1-160. Nanya need not respond to the RFAs concerning the 64 products that are the subject of the motion to amend Renesas' PICs. As previously stated, however, if Judge Fogel rules that the 64 products may be added, Nanya shall respond to the RFAs concerning those products without further request.

### B. RFA Nos. 161-214

These requests ask Nanya to admit that the circuitry depicted in the schematics for RFAs 1-160 shows and/or includes certain elements. Nanya objects to the requests on the grounds that they require disclosure of its claim construction position, and are therefore improper under Patent Local Rule 2-5.[10] It states that, as the requests contain terms and phrases used in the claim language, these terms may be the subject of future claim construction by the court.[11] Nanya argues that there is no agreed upon definitions for such terms, and that requiring it to provide clearer definitions would reveal its claim construction position. Renesas replies that not all of the 54 RFAs Nanya objects to contain claim language (i.e. requests pertaining to "bit lines"), and further argues that it is not seeking Nanya's claim construction position, but confirmation that the schematics are what they purport to be.

---

[10] Patent Local Rule 2-5 states that "[a] party may object . . . to the following categories of discovery requests . . . on the ground that they are premature in light of the timetable provided in the Patent Local Rules: (a) Requests seeking to elicit a party's claim construction position."

[11] As examples, Nanya states that RFA 161 seeks information on "data lines," a term used in the '520 and '037 patents, and that RFA 179 incorporates entire claim elements from the '520 and '037 patents.

At the hearing, the parties acknowledged that they do not know which terms will be subject to claim construction. Because RFAs 161-214 contain numerous terms, some of which may be subject to future claim construction, the court feels that the requests are premature at this point. Nanya's responses to these RFAs could prejudice it during claim construction. Accordingly, Renesas' motion is DENIED as premature with respect to RFAs 161-214. *See* Patent L.R. 2-5.

**ORDER**

Except as provided in paragraph 6, Nanya shall comply with the terms of this order by **May 20, 2005**.

**IT IS SO ORDERED.**

Dated: 5/5/05                              /s/ Howard R. Lloyd
                                           HOWARD R. LLOYD
                                           UNITED STATES MAGISTRATE JUDGE

1  THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

2  R. Tulloss Delk     tullossdelk@quinnemanuel.com, alicemckinley@quinnemanuel.com

3  Stephen M. Geissler     sgeissler@jenner.com, jsalla@jenner.com

4  Donald R. Harris     dharris@jenner.com,

5  Victoria F. Maroulis     vfm@quinnemanuel.com, sophiapope@quinnemanuel.com

6  Sam Citron O'Rourke     SOROURKE@ORRICK.COM

7  Joseph Albert Saltiel     jsaltiel@jenner.com,

8  Samuel B. Shepherd     sbs@quinnemanuel.com, patriciareilly@quinnemanuel.com

9  Terrence Joseph Truax     ttruax@jenner.com

10 Kaiwen Tseng     ktseng@orrick.com, hlee@orrick.com;ttutko@orrick.com

11 Ronald L. Wanke     rwanke@jenner.com,

12 Eric L. Wesenberg     ewesenberg@orrick.com, afreddie@orrick.com

13 Rowena Y. Young     ryoung@orrick.com, aako-nai@orrick.com;tbriggs@orrick.com;dmeckstroth@orrick.com;spak@orrick.com;mortiz@orrick.com

15 * Counsel are responsible for providing copies of this order to co-counsel who have not registered under the Court's ECF system.

Dated: 5/3/05

/s/ KWN
Chambers of Magistrate Judge Howard R. Lloyd